(C. D. 1422)

## C. J. Tower & Sons v. United States

United States Customs Court, Third Division

(Decided May 27, 1952)

*Barnes, Richardson & Colburn* (*Edward N. Glad* and *Joseph Schwartz* of counsel) for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*Dorothy C. Bennett* and *Richard H. Welsh*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

EKWALL, Judge: The merchandise involved in this case consists of 35 bales of rags imported into the United States from Canada. Of this number, 22 bales were granted free entry as roofing rags, paper stock, under the provisions of paragraph 1750 of the Tariff Act of 1930 (19 U. S. C. § 1201, par. 1750), and are not here in controversy. Of the remaining 13 bales, 12 were assessed with duty at the rate of 7½ per centum ad valorem as "Waste, not specially provided for" under paragraph 1555 of the said tariff act, as modified by the trade agreement with the United Kingdom (T. D. 49753). The remaining bale was assessed at the rate of 9 cents per pound as "Wool and hair wastes: * * * Wool rags" under paragraph 1105 (a) of said tariff act (19 U. S. C. § 1001, par. 1105 (a)), as modified by the same trade agreement.

The customs officials, as shown by the official papers, numbered the bales for identification purposes at the time of importation.

Plaintiff claims that the 13 bales are properly free of duty as "paper stock" under said paragraph 1750.

As shown by the report of the appraiser in evidence, which apparently was adopted by the collector, the reason for the assessment of the 12 bales containing rayon rags and a mixture of rayon and cotton rags apparently is as follows:

\* \* \* It is our understanding that Rayon Clips or fibers are not wanted by Roofing manufacturers because these fibers do not readily absorb the pitch or asphalt with which the paper or felt is to be impregnated.

The collector, in classifying 6 bales of rayon and cotton rags and 1 bale of wool, rayon and cotton, out of the 13 bales, invoked the mixed-material clause of section 508 of the Tariff Act of 1930 (19 U. S. C. § 1508). That section is in the following language:

SEC. 508. COMMINGLING OF GOODS.

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

Plaintiff produced the testimony of one witness, the vice president of the importing corporation, who had been engaged since 1934 in buying, selling, and examining material such as waste paper, rags, etc., including rags that are used in making roofing paper, and has been in a similar line of business since 1918, handling paper-making rags, paper stock rags, waste paper, etc. In the course of his duties, he sells paper stock rags to roofing mills and writing paper mills in various localities. This witness has had occasion to visit these mills during the course of which visits he became familiar with the use of the paper stock rags sold to the mills by him in the Midwest and the East and as far south as Maryland. He purchased the shipment here involved and also sold it to the Armstrong Cork Co., Inc. He stated that he did not see the merchandise before the sale, but inspected two bales out of the shipment at the plant of the Armstrong Cork Co., Inc., about 6 months after importation, and "it seemed to" him that the two bales examined consisted of "a combination of partly rayon cuttings, partly rayon waste, and mixed with other materials." He did not identify the bales examined by him except to state that they were part of the instant shipment. He did not see the bale numbered by the customs officials as 18, containing some wool rags. He described "rayon cuttings" as lock stitch, and rayon waste as "the threads that might have been dirty from the sweepings from the floor." It is not clear from the testimony of this witness whether the bales seen by him were a part of the lot admitted to free entry by the collector or whether they were bales from those denied free entry. His state-

ment was that he informed the Armstrong Cork Co., Inc., mill that he wanted to "look at some of the bales that came out of car 77437 PRR" which the official papers show to be the car containing this importation. He later testified that the bales he saw were tagged with that car number.

The witness testified to his familiarity with the type of merchandise that he saw in the two bales examined and stated that it is chiefly used in making roofing paper. His testimony on this point was limited to the merchandise represented by the two bales he inspected.

On cross-examination, he testified that as to old rayon hosiery and wool rags, the chief use of those commodities is not for roofing paper. In explanation of an earlier statement that the mills sometimes reject rags sent to them, the witness said:

On roofing rags, as I said before, in order to understand the picture, roofing rags is a residue of everything else, old rags or new cotton cuttings, the residue which can mean that for instance, new cotton cuttings may have gotten full of oil—it gets to the mill and they can't use them, so they reject them, or we may find a lot of dirt or strings, or what have you. Roofing rags, because it is the residue of our business, they are apt to throw anything in there, and the dealer will throw them in and take a chance they will go through. He has to dump it anyway, so he will try to see if they can get some money out of it. If he doesn't get away with it, they will bring it to the dump and charge it back.

The roofing paper manufacturer sorts the bales to see what he can use for the manufacture of his paper. Material of the grade known as roofing rags is not used for the manufacture of other kinds of paper.

There was offered and received in evidence as defendant's exhibit 1 the order from the Armstrong Cork Co., Inc., covering this shipment. This order contains, on the reverse side thereof, a printed set of specifications entitled "FELT MANUFACTURERS ASSOCIATION, CLASSIFICATION OF RAG STOCK," which the witness admitted had been in effect since prior to 1930, without change. Plaintiff's witness stated that while some of the purchasers of this type of materials print these specifications on their order blanks, the vast majority do not.

We set forth the portions of these specifications, in so far as they classify roofing rags, as follows:

No. 1—ROOFING RAGS. Soft rags all containing a percentage of wool. Satinet garments, including men's coats, pants, vests, mixed linsies, women's coats, sacks and cloth skirts, all containing a portion of wool fibre, excluding over-alls, khaki, canvas, duck, quilts, seams and strippings or similar materials.

No. 1. S.—SEAMS AND CLOTHING STRIPPINGS FROM GARMENTS.

No. 2—ROOFING RAGS. Cotton rags. Large and small cotton rags, including linings, rag carpets, print rags and stockings, excluding silk rags, rayon, wood and fibre rags.

\* \* \* \* \* \* \*

No. 5—ROOFING RAGS.  A—Tailor rags, free from all rubbish and paper.

B—Tailors rags, to contain not more than 10% paper.

C—Tailor rags, to contain over 10% and not to exceed 50% paper.

\*      \*      \*      \*      \*      \*      \*

ALL MATERIAL PURCHASED SUBJECT TO THE FOLLOWING CONDITIONS, AND YOUR ACCEPTANCE OF OUR ORDER CONSTITUTES AGREEMENT TO THE FOLLOWING CONDITIONS:

\*      \*      \*      \*      \*      \*      \*

3. INCLUDED IN THE MATERIALS NOT SUITED FOR THE MANUFACTURE OF FELT ARE: \* \* \* RAYON, \* \* \*.

Government counsel also offered and there was received in evidence as defendant's illustrative exhibit A, a book entitled "Blue Book 1913–1948" described in the foreword as containing "all the classifications and trade customs affecting the Waste Material Industry." This is brought out, according to the foreword, by the National Association of Waste Material Dealers, Inc. On pages 204–5 thereof, we find the "Classification of Rag Stock," in practically the same language as that above set forth.

In connection with the presence of rayon in roofing rag stock, this witness stated:

\* \* \* it has very little effect. Rayons, naturally nobody likes to get them, but they take them—rayons will have the tendency when you put it in the manufacture with other material, most of it would go down the drain because it dissolves and disappears, but you have to understand the business and the position of these mills why they take rayons, why they will take silk that their specifications say they won't take; still there isn't a bale of roofing rags today or since 1918 that didn't contain silk or rayon. I have still to see one bale that didn't contain some rayon or silk in number 2 roofing rags. The mills will take a percentage of rayon, depending upon how bad they need the rags. If today they need the rags bad enough, they will take more rayon. They know only a certain part of the rayon will remain, because half will dissolve, but that is another way of getting roofing rags. That is another way of making a concession.

In answer to a question, the witness further said that although the specifications provide that the mills will not accept the rayon, some rayon is included, and the mills take them because they need the rags. That is, when business is good, when there is a demand for the finished product, the roofing paper manufacturers will take anything they can get, but when business is not good, they are more particular. When the demand is great, the roofing paper manufacturers take rayon lock-stitched rags. As to the class of rags covered by the instant importation, it is noted that they are invoiced as No. 2 and No. 5 "Roofing Rags." However, the witness stated that the mills make the segregation. If a bale is marked No. 2, and the mills find it to be a No. 1, they will accept it as No. 1. If it is marked No. 1, and the mills find it to be No. 3 or 4, they accept it as No. 3 or 4. This information was given by the witness in connection with a question as to whether the invoice here involved contained any No. 1 roofing

rags. He also stated that given a bale of rags valued at $29 a ton containing 20 per centum wool rags and the rest cotton or rayon, the chief use thereof would be as roofing rags. In this connection, he called attention to the definition of No. 1 roofing rags given in the specifications above set forth.

At the request of plaintiff's counsel, the case was transferred to Buffalo in order to obtain testimony from the Armstrong Cork Co., Inc., to whom the rags here involved were sold, but at the hearing at that port plaintiff's counsel stated that it had no evidence to offer at that port, and the case was submitted.

The report of the appraising officer, which apparently was adopted by the collector in assessing duty, sets forth the result of the sampling of the 13 bales as follows, the numbers of the bales being those adopted by the customs officials for purposes of identification:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

USC #3　20%　Rayon rags, balance cotton roofing rags (estimated percentages).
"　#4　40%　Rayon rags, balance cotton roofing rags (estimated percentages).
"　#5　50%　Rayon rags, balance cotton roofing rags (estimated percentages).
"　#6　40%　Rayon rags, balance cotton roofing rags (estimated percentages).
"#18　10%　Rayon rags, 20% Wool rags, Balance cotton roofing rags (estimated percentages).
"#19　100%　Rayon hose as per sample.
"#20　50%　Rayon rags, balance cotton roofing rags (estimated percentages).
"#22　45%　Rayon rags, 5% Rayon thread waste, balance cotton roofing rags (est. percentages).
"#23　100%　Rayon rags.
"#24　·100%　Rayon rags.
"#27　70%　Rayon seamers, 30% Rayon thread waste.
"#28　100%　Rayon rags.
"#29　100%　Rayon rags.

All of the above bales except no. 18, advisorily classified P. 1555, TD 49753, 7½%, Sec. 508, TA 1930.

Bale no. 18—P. 1105 (a) TD 49753, 14¢ lb. Sec. 508, TA 1930.

The appraiser's advisory classification of the entire 35 bales is given as follows:

22 bales cotton roofing rags as paper stock, free, par. 1750.
6 bales rayon rags as waste, n. s. p. f., 7½% par. 1555. T. D. 49753.
6 bales mixed rayon and cotton rags as waste, n. s. p. f., 7½% par. 1555. T. D. 49753, Sec. 508.
1 bale mixed wool, rayon, and cotton rags as wool rags, 9¢ lb., par. 1105 (a). T. D. 49753, Sec. 508. The wool waste in this sample is a wool rag specifically provided for in P. 1005 (a).

[T. D. 49753 is the Proclamation of the Trade Agreement between the United States and the United Kingdom.]

The report also sets forth the definitions of roofing rags as found in the Dictionary of Paper published by the American Paper & Pulp Association, which agree in substance with those in the specifications above set forth in the printed portion of the order for this merchandise

by the Armstrong Cork Co., Inc., and as found in the Blue Book (illustrative exhibit A). Based upon these definitions, the report states:

From the above definition it can be seen that rayon is not a material included in the manufacture of roofing paper or felt. Manufacturers object to rayon waste for the reason that there is a greater shrinkage in that material. However, manufacturers would accept rags with a small percentage of rayon. This office would not classify rags containing from 10% to 50% rayon as paper stock.

The brief on behalf of the plaintiff contends that the conclusions of the customs officials are rebutted by the testimony of the vice president of the importing corporation to the effect that the only use of rayon rags or a mixture of rayon, cotton, and wool rags, such as plaintiff's counsel considers the instant merchandise to be, has been since 1918 and still is for the making of roofing felt or paper, and that plaintiff has made a *prima facie* case. In support of this theory, he cites the case of *Katzenstein & Keene (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 143, T. D. 41674, which holds that it is not incumbent on the importer to show to what use the particular importation was devoted; that, having shown that the chief use of the kind of rags imported was for paper making, its claim for free entry should have been sustained. However, plaintiff has not identified the instant importation as being composed of rags other or different than shown by the appraiser's report above set forth. For instance, we do not understand the witness' testimony as going so far as to state that a bale of rags composed of 100 per centum rayon would be accepted as roofing rags by the trade. His statement was that if he had a shipment consisting of 10 bales of 100 per centum rayon rags, if it were lock-stitch rayon or synthetic rayon, or "a rayon that might be laminated with something," he would throw it in to the roofing rags. (P. 19.) The record is silent as to the type of rayon rags contained in the bales returned by the customs officials as containing 100 per centum rayon rags. In this connection, it is significant that no testimony was offered on the question of whether all of the bales were accepted by the mill or whether some were rejected. In fact, we have no proof other than the appraising officer's report as to the contents of the 13 bales. Plaintiff's witness saw only two bales from the importation and was unable to identify them as being a part of the 22 bales which were admitted free of duty or of the 13 which were assessed with duty.

Nor do we find any evidence as to conditions in the trade at and immediately prior to 1930, that is, whether at that time the roofing felt business was good or bad, which, according to the testimony, governed the acceptance or rejection of rags containing rayon.

The rule has long been established that an importer claiming free entry of waste rags as paper stock under paragraph 1750, *supra*, and correlative provisions of prior acts, must identify the materials ac-

tually imported as being of a type commonly known and chiefly used for making paper at and prior to the time of the passage of the tariff act involved. *Hawley & Letzerich* v. *United States,* 19 C. C. P. A. (Customs) 47, T. D. 44893; *United States* v. *Gelgam Corp.,* 22 C. C. P. A. (Customs) 402, T. D. 47402; *National Sanitary Rag Co.* v. *United States,* 23 C. C. P. A. (Customs) 200, T. D. 48051; and *United States* v. *S. Schapiro & Sons,* 24 C. C. P. A. (Customs) 343, T. D. 48771. As stated above, proof in the instant case is lacking that the contents of the 13 bales involved were of a type commonly known and chiefly used for making roofing paper at and prior to the time of the passage of the Tariff Act of 1930. Nor is there any evidence in the record as to whether the Armstrong Cork Co., Inc., rejected any of the merchandise covered by the 13 bales. In fact, the only proof presented on the part of the plaintiff as to the materials actually imported consisted of testimony that only two bales of the entire shipment were examined by the importer, and those bales were not identified as being a part of the disputed 13 bales. Defendant's evidence, on the contrary, shows that all 13 bales were examined by the customs officials and that such examination disclosed 5 bales to contain 100 per centum rayon; 1 bale, 20 per centum rayon; 2 bales, 40 per centum rayon; 2 bales, 50 per centum rayon; 1 bale, 45 per centum rayon, together with 5 per centum rayon thread; 1 bale, 70 per centum seamers, together with 30 per centum rayon thread; and 1 bale, 10 per centum rayon rags, together with 20 per centum wool rags. The remaining percentage in each' bale consisted of cotton roofing rags.

As to the six bales returned as commingled rayon and cotton rags and the one bale returned at 10 per centum wool rags intermingled with rayon and cotton rags, it was the duty of the importer, in order to obtain free entry for such of the different classes of rags as may have consisted of roofing rags, to segregate under customs supervision the different classes, under the mandatory provisions of section 508, *supra.* *S. Schapiro & Sons* v. *United States,* 29 C. C. P. A. (Customs) 235, C. A. D. 196, and *Pink Supply Co.* v. *United States,* 32 C. C. P. A. (Customs) 48, C. A. D. 284. This was not done. In view of plaintiff's theory that the entire contents of the 13 bales consisted of only one type of rags for dutiable purposes, i. e., roofing rags, it is understandable that no request was made for segregation under customs supervision. However, in the absence of such segregation, no allowance could be made by the collector for any portion of the importation which may have consisted of roofing rags.

Upon the record, we find that the plaintiff has failed to overcome the presumption of correctness attaching to the collector's action. The protest is therefore overruled.

Judgment will be rendered accordingly.